## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 5:25-CR-83-KKC-MAS** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **MARTAVEUS LEE BELL, JR.,** | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on several motions by Defendant Martaveus Bell, Jr., including his motion to compel discovery (R. 22), motion to suppress (R. 23), and motion to dismiss the indictment (R. 24). The Government responded to each motion. (R. 30, 31, 32.) The Government also filed a motion to supplement its response to the motion to dismiss. (R. 35.) The Court will grant the Government's motion and consider the supplemental Sixth Circuit opinion when evaluating Bell's motion to dismiss. Now that this matter is fully briefed, the Court will address each of Defendant's motions.

## I. BACKGROUND

Beginning in January 2025, Special Agent Matthew Eversole and the Winchester Police Department worked with confidential informants to investigate Bell's drug trafficking activities. (*See* R. 22-1.) Bell was previously convicted of possessing a controlled substance (R. 32 at 3) and first-degree manslaughter, among other convictions. (R. 22-1 at 7.)

Between February and May 2025, investigators used confidential informants to conduct multiple controlled purchases of methamphetamine from Bell. (*Id*. at 3–8.) The first series of controlled buys occurred on February 18, February 27, March 5, March 11, and March 12, 2025. (*Id*.) The second series of controlled buys, conducted by a second confidential informant, occurred on April 22, May 2, and May 23, 2025. (*Id*.) These transactions were audio/video recorded and took place in rented vehicles. (*Id*.) Two controlled purchases occurred in vehicles parked in a lot behind 726 Triple Crown Circle, Lexington, Kentucky ("the residence"). (*Id*. at 5–7.)

During the March 5, 2025 transaction, the confidential informant noticed firearms in close proximity of Bell. (*Id*. at 5.) Before the next controlled purchase, Agent Eversole instructed the confidential informant to send Bell a text asking if anyone has "straps" for sale. (*Id*.) Bell suggested a pawn shop, to which the confidential informant responded "Can't I'm a felony [sic]." (*Id*.) Bell said they would talk in person. (*Id*.) After the March 11, 2025 controlled purchase of methamphetamine, Bell called the confidential informant to say he had a firearm for sale. (*Id*. at 6.) The two met in a rental vehicle in a parking lot, where the confidential informant purchased a Taurus pistol from Bell. (*Id*.)

The next day, the confidential informant purchased a second Taurus pistol from Bell. (*Id*.) While setting up the transaction, Bell instructed the confidential informant to meet at "his place." (*Id*.) "His place" was the parking lot located behind the residence. (*Id*.)

2

On or about May 14, 2025, Agent Eversole obtained a search warrant for prospective information related to Bell's phone number. (*Id.* at 9.) Using the GPS coordinates uncovered by the warrant, Agent Eversole attempted to locate Bell's address. (*Id.*) The coordinates placed Bell's cellphone in the area of East Seventh Street and Montgomery Avenue, an area in close proximity to the residence. (*Id.*)

After observing that this location was in close proximity to where two of the controlled transactions occurred, Agent Eversole drove to the residence. (*Id.*) Upon arrival, Agent Eversole observed a rented vehicle at the residence. (*Id.*) Specifically, the vehicle was a white 2024 Nissan Altima bearing Kentucky registration plate M7K283 ("the Nissan Altima"). (*Id.*)

On May 21, 2025, a covert pole camera was installed in an area covering the residence. (*Id.*) When Agent Eversole reviewed the video, he observed a black male operating the Nissan Altima and going into the residence. (*Id.*) It appeared the person used a key to enter. (*Id.*)

On May 23, 2025, Bell and a confidential informant completed another controlled purchase of methamphetamine. (*Id.* at 9-10.) Before the purchase, Bell was observed on the covert pole camera exiting the residence and leaving in the Nissan Altima. (*Id.*) Investigators observed Bell operating the Nissan Altima and pulling into a parking lot approximately three minutes away from the residence, where Bell and the confidential informant completed the controlled purchase. (*Id.* at 10.) When the purchase was complete, Bell entered the store adjoining the parking lot. (*Id.*) Bell then returned to the residence. (*Id.* at 11.)

3

Agent Eversole continued to monitor the covert pole camera and consistently observed Bell entering and exiting the residence with a key. (*Id.*) Based on his observations, Agent Eversole applied for and was granted a search warrant to search the residence. (*See id.*; R. 30 at 3.)

On June 5, 2025, the search warrant was executed on the residence. (R. 30 at 3.) During the search, law enforcement seized over 1,600 grams of methamphetamine and over $20,000, as well as two firearms and drug trafficking paraphernalia. (*Id.*) Bell was taken into federal custody. (*Id.*)

On July 3, 2025, an indictment charged Bell with the following:

1. Distributing methamphetamine during the February 18, February 27, March 5, and March 11, 2025 transactions, in violation of 21 U.S.C. § 841(a)(1). (Counts 1, 2, 3, and 4.)

2. Possession with intent to distribute methamphetamine for the narcotics seized on June 5, 2025, in violation of 21 U.S.C. § 841(a)(1). (Count 8.)

3. Possessing a firearm as a convicted felon on March 11, March 12, and June 5, 2025, in violation of 18 U.S.C. § 922(g)(1). (Counts 5, 6, and 10.)

4. Possessing a firearm in furtherance of a drug trafficking crime on June 5, 2025, in violation of 18 U.S.C. § 924(c)(1)(A). (Count 9.)

5. Trafficking in firearms to another person, "knowing or having reasonable cause to believe that the use, carrying, or possession of a

firearm by the recipient would constitute a felony" on March 11 and March 12, 2025, in violation of 18 U.S.C. § 933(a)(1). (Count 7.)

(R. 12.) Importantly, the indictment does not charge Bell with the offenses from all of the controlled purchases, including the May 23, 2025 controlled purchase.

On September 10, 2025, Bell filed three motions. His motion to compel discovery seeks to compel the Government to provide video and audio of the May 23, 2025 transaction.[1] (R. 22.) Bell's motion to suppress seeks to suppress the evidence obtained during the execution of the search warrant on June 5, 2025. (R. 23.) Finally, Bell's motion to dismiss seeks to dismiss his firearm charges. (R. 24.) Each motion will be addressed in turn.

## II. ANALYSIS

### A. Motion to Suppress

Bell moves the Court to grant his motion to suppress all the items of evidence seized in the search of the residence on June 5, 2025. (R. 23.) Bell argues that the around-the-clock use of a covert pole camera installed by the police to record and observe the outside of a residence, individuals, and the movement of vehicles should have been supported by a search warrant. (R. 23-2.) Bell asserts that the covert pole camera could track his movements to and from constitutionally protected areas of his home, which could have revealed information about Bell's familial, political,

---

[1] While Bell's motion lists May 21, 2025 as the date of the transaction, the Government's response assumes Bell is requesting the video of the May 23, 2025 controlled buy, which they have not already provided. (*See* R. 30.) According to Agent Eversole's affidavit, a covert pole camera was installed on May 21, 2025. (R. 22-1.) The affidavit does not indicate that a control buy occurred on that day, but one did occur on May 23, 2025. (R. 22-1.) The Court will therefore treat Bell's motion as a request to obtain the audio and video recordings of the May 23, 2025 controlled buy.

professional, religious, and sexual associations. (*Id*. at 3-4.) The police, using the video information obtained from the covert pole camera, established the nexus between the property and criminal activity. The resulting search warrant issuance and execution of the residence led to the uncovering of weapons, narcotics, and an incriminating statement by Bell. Because the use of the covert pole camera was not supported by a search warrant, Bell requests the Court suppress the evidence seized from the search of the residence and the statements Bell made at the scene.

A Fourth Amendment search occurs when the government violates a subjective expectation of privacy in the area searched, and the expectation is one that society is willing to accept as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). In the Sixth Circuit, law enforcement may surveil a person's activities outside of their home if it is observable by another member of the public. *See United States v. Trice*, 966 F.3d 506, 520 (6th Cir. 2020) (affirming denial of a motion to suppress involving the use of a hidden camera in an apartment complex hallway capturing the defendant leaving his residence on the way to conduct a controlled transaction elsewhere); *United States v. Houston*, 813 F.3d 282, 290 (6th Cir. 2016). In *Houston*, a case cited by both parties,[2] the Sixth Circuit determined that one has "no reasonable expectation of privacy in video footage recorded by a camera that was located on top

---

[2] Bell relies on the *Houston* concurrence in his argument. Because the concurrence is not binding, the Court will only consider the majority's opinion here. *See, e.g., United States v. Peters*, No. 6:17-CR-55-REW-HAI-2, 2018 U.S. Dist. LEXIS 204067, at *9 n.12 (E.D. Ky. Dec. 3, 2018) ("Concurrences are not, when accompanying a majority opinion, binding precedent.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 285 n.5 (2001)).

of a public utility pole and that captured the same views enjoyed by passerby on public roads." 813 F.3d at 287-288.

Here, the pole camera recorded and observed the outside of a residence, which captured Bell entering and exiting the residence. The comings and goings from one's house are not constitutionally protected. *Trice*, 966 F.3d at 520 ("[T]here is no reasonable expectation of privacy in the activity of leaving from a constitutionally protected area (the home) to an area without constitutional protection."). Nothing indicates that any sensitive information related to Bell was revealed and nothing indicates that he had any reasonable expectation of privacy in the information obtained by the covert pole camera. Bell's argument, therefore, fails.

Additionally, the warrant obtained to search the residence was not based solely on the covert pole camera footage. While the footage established that the residence was likely Bell's residence, cell phone tracking and controlled buy locations connected him to the area and established that he trafficked drugs and guns. (*See* R. 22-1.) Even if the footage was not at play, enough evidence existed outside of it to support a warrant for the search of Bell's residence.

Accordingly, the Court will deny Defendant's motion to suppress. (R. 23.)

**B. Motion to Compel Discovery**

Bell moves for the Court to order the Government to produce an audio and video recording of the alleged May 23, 2025 controlled buy between himself and a confidential informant. (R. 22.)

When a confidential informant is involved in a case, the Government maintains a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (internal citations omitted). "A defendant must provide some evidence that disclosure of the informant's identity would assist in his defense before disclosure would be warranted." *United States v. Ray*, 803 F.3d 244, 274 (6th Cir. 2015) (internal citations omitted). The Court must conduct a balancing test to determine whether disclosure is justifiable, considering "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62.

### 1. Relevance to the Crime Charged

Defendant argues that the May 23, 2025 audio and video recordings are relevant and, therefore, must be disclosed. (R. 22 (citing Fed. R. Cr. P. 16(a)(1)(B)(i)).) A recorded statement is not relevant when the controlled buys are "not the factual basis for the crimes charged." *United States v. Henderson*, No. 23-1786, 2024 U.S. App. LEXIS 18572, *24 (6th Cir. July 26, 2024).

The May 23, 2025 controlled buy was not the factual basis for the crimes charged. Bell was not charged with any crime arising from this controlled buy and the Government only used the evidence and information provided by the confidential informant to establish probable cause to search the residence. This is not enough to establish relevance. Bell's argument fails.

8

### 2. Materiality to Preparing a Defense

Bell argues that he should be allowed to obtain the May 23, 2025 audio and video recordings because they are material to preparing a defense. (R. 22 at 3 (citing Fed. R. Cr. P. 16(a)(1)(E)). Specifically, Bell wishes to inspect the recordings so that he may confirm whether the controlled buy actually occurred between the confidential informant and Bell. (*Id.*)

When determining whether an item is material to preparing a defense in the context of Rule 16, the Court must consider whether the item is material to preparing "the defendant's response of the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).

As discussed *supra*, the recordings will not exculpate Bell because he was not charged for the alleged crime that occurred in the May 23, 2025 recordings.

Additionally, Bell has not shown how the undisclosed recordings would undermine the Government's case against him. The foundation for the search warrant obtained to search the residence was built upon more than the May 23, 2025 controlled buy. Bell does not dispute the occurrence of the five charged controlled transactions, the recordings of which he possesses. While Bell disputes the constitutionality of the pole camera footage, as denied *supra*, he does not dispute that the footage shows him entering and exiting the residence during the relevant time frame. Instead, Bell speculates that the May 23, 2025 audio and video recordings contain information that casts doubt on the validity of the warrant. This is an insufficient conclusory assertion. *See United States v. Sanders*, 106 F.4th 455, 475

(6th Cir. 2024) (finding that Defendant's assertions that items "contain information that casts doubt on the validity of the warrant or would otherwise help him 'explore' or 'discredit' other parts of the investigation" are insufficient to demonstrate entitlement to discovery). To demonstrate entitlement to discovery, Bell "needed to address how the additional evidence might show, in a material sense, that he did not possess the gun[s] or narcotics found at the apartment." *Id.* While the recordings might show that Bell did not participate in the controlled buy on May 23, 2025, Bell makes no argument that the recordings show that he did not possess the guns or narcotics found at the residence during the June 5, 2025 search.

Considering the *Roviaro* balancing test, Bell has not shown that nondisclosure of the May 23, 2025 audio and video recordings would be erroneous. Bell has not sufficiently demonstrated how the recordings are relevant to the crime charged, material to preparing a defense, or necessary for a fair trial, and does not otherwise satisfy factors that would render nondisclosure erroneous. Accordingly, the Court will deny Bell's motion to compel.

### B. Motion to Dismiss

Bell mounts facial and as-applied Second Amendment challenges to his firearm charges. Specifically, Bell takes issue with Counts 5, 6, 7, 9, and 10 of his indictment and requests the Court dismiss those charges. A facial challenge to a law's constitutionality is an effort to "invalidate the law in each of its applications, to take the law off the books completely[,]" while an as-applied challenge argues that the law is unconstitutional as enforced against the party before the court. *Speet v. Schuette*,

726 F.3d 867, 871-72 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009)); *see United States v. Rahimi*, 602 U.S. 680, 693 (2024).

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In other words, the Second Amendment guarantees "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8-9 (2022); *see also District of Columbia v. Heller*, 544 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010). The Second Amendment also protects "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10.

Courts must employ a two-step *Bruen* analysis when assessing the constitutionality of laws restricting the right to bear arms. *Id*. at 17. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. Second, when a regulation burdens such conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. If the Government shows that the regulated conduct "falls beyond the Amendment's original scope, 'then the analysis can stop there; the regulated activity is categorically unprotected.'" *Id*. at 18 (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)).

### 1. Counts 5, 6, and 10 -- 18 U.S.C. § 922(g)(1)

Bell argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional. (R. 24-1 at 7.) § 922(g)(1) states that it is unlawful for any person convicted of "a crime

11

punishable by imprisonment for a term exceeding one year" to possess a firearm. The Sixth Circuit has already conducted a *Bruen* analysis of § 922(g)(1) and determined that the statute is constitutional and "not susceptible to a facial challenge." *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) (Finding that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous" and that § 922(g)(1) "is an attempt to do just that."). The Sixth Circuit has continued to uphold *Williams*. *See United States v. Greely*, No. 23-1978, 2025 U.S. App. LEXIS 16235 (6th Cir. June 30, 2025); *United States v. Wilkins*, No. 24-6157, 2025 U.S. App. 28390 (6th Cir. Oct. 28, 2025). Bell's argument that this Court should reject *Williams* and find § 922(g)(1) facially unconstitutional, therefore, fails.

Bell also argues that § 922(g)(1) is unconstitutionally vague. (R. 24-1 at 15.) "A criminal statute is unconstitutionally vague if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (internal citations omitted). "[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)).

The Sixth Circuit recently determined that a vagueness challenge to § 922(g)(1) must fail when the defendant "does not attempt to argue the statute is vague 'as applied to his particular case.'" *Wilkins*, No. 24-6157, 2025 U.S. App. LEXIS at *4 (citing *Krumrei*, 258 F.3d at 537). Here, Bell only sets forth an argument that the

statute is generally vague and does not provide any argument that it is vague as applied to his case. Therefore, Bell's argument that § 922(g)(1) is unconstitutionally vague fails.

Accordingly, the Court will deny Bell's Motion to Dismiss Counts 5, 6, and 10 of the Indictment.

### 2. Count 7 – 18 U.S.C. § 933(a)(1)

Bell argues that 18 U.S.C. § 933(a)(1) is unconstitutionally vague as applied to his case. (R. 24-1 at 22.) He also appears to make a facial challenge to the statute. (*Id.* at 24 ("the criminalization of selling gun[s] based on a transferee stating they are a felon violates the Second Amendment.").) § 933(a)(1) states that it shall be unlawful to transfer a weapon "if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony[.]"

While the text of the Second Amendment "presumptively protects the act of selling or transferring a firearm to a felon," the Sixth Circuit has found that statutes criminalizing possession of firearms by felons "sufficiently resembles other firearm regulations historically permitted in this country." *United States v. Knipp*, 138 F.4th 429, 435 (6th Cir. 2025) (finding 18 U.S.C. § 922(d)(1), a statute which criminalizes selling or otherwise disposing of firearms to a felon, survives facial attack); *see United States v. Williams*, 113 F.4th 637, 650-57 (6th Cir. 2024) (finding that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous"). In other words, "the right to acquire is limited by lawful constraints

on the right to possess." *Knipp*, 138 F.4th at 435. Because the Sixth Circuit has upheld the federal felon-in-possession law against facial attack, § 933(a)(1) likewise survives facial attack.

Bell argues that § 933(a)(1) is unconstitutionally vague. (R. 24-1 at 22-24.) Specifically, because *Williams* limited § 922(g)(1)'s prohibition to "dangerous felons," Bell argues it would be difficult for one to know if they are violating § 933(a)(1) without knowing the specific felony for which the recipient was convicted. (*Id.* at 23.) But this argument challenges only the *Williams* procedure for determining dangerousness which, as discussed *supra*, has already been upheld by the Sixth Circuit and is therefore binding on this Court. Accordingly, Bell's argument fails.

Bell attempts to prove non-dangerousness by bringing an as-applied challenge to § 933(a)(1) based on hypothetical situations that have no application to his own case. (*See* R. 24-1 at 23 ("Hypothetically, the transferee could be a felon or fraud crime or child support arrearages, which would mean that such person can likely legally carry a firearm.").) As discussed *supra*, Bell must establish that "the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *Kernell*, 667 F.3d at 750 (internal citations omitted). The statute is not vague as applied to Bell's case: Bell could be convicted if he knew or had reason to believe "that the use, carrying, or possession of a firearm by the recipient would constitute a felony[.]" 18 U.S.C. § 933(a)(1). Under the alleged facts, Bell sold two guns to a confidential informant who previously told Bell he was a "felony." (R. 22-1 at 5.) At that point, Bell had sold hundreds of grams of

methamphetamine to the same confidential informant, and the confidential informant told Bell he wanted guns because he could "flip" them and he "wouldn't mind having one now as well since my business picked up." (*See id.*) The Government could point to these conversations to demonstrate that Bell knew or should have known the confidential informant was a convicted felon, and a dangerous one at that. *See Williams*, 113 F.4th at 663 ("A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed . . . a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking[.]").  Bell has failed to establish that § 933(a)(1) is unconstitutionally vague as applied to his case.

The Court will deny Bell's Motion to Dismiss Count 7 of the Indictment.

### 3. Count 9 – 18 U.S.C. § 924(c)(1)(A)

Bell argues that 18 U.S.C. § 924(c)(1)(A) is unconstitutional as applied to his case. (R. 24-1 at 20.) This law states that it shall be unlawful to possess a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A).

The Sixth Circuit has found that the text of the Second Amendment does not protect a right to possess a firearm in furtherance of a drug trafficking crime. *United States v. Underwood*, 129 F.4th 912, 929 (6th Cir. 2025). Additionally, the Sixth Circuit found that "§ 924(c)(1)(A)'s prohibition against possessing a firearm in furtherance of a drug trafficking crime fits comfortably within the history and tradition of gun regulation in this country." *United States v. Risner*, 129 F.4th 361, 369 (6th Cir. 2025). The conduct regulated by § 924(c)(1)(A), therefore, "falls beyond the Amendment's original scope" and is categorically unprotected by the Second

Amendment. *See Bruen*, 597 U.S. at 18. No Second Amendment constitutional challenge to the statute, either facial or as-applied, survives. Accordingly, Bell's argument fails.

Additionally, Bell argues that the "in furtherance" element of § 924(c)(1)(A) was not satisfied in his case because all firearms were found in his residence, not hidden or stored in a car or on his person. (R. 24-1 at 21.) Bell notes that "Congress decided to add possession into the statute and 'in furtherance of' so that the Government could severely prosecute a person who had a gun (but hidden or stored) during a drug deal or near a stash of drugs." (*Id.* at 20–21). To the extent Bell's argues the "in furtherance" element was not satisfied, the Court will not address it here. This is a question for the jury to decide.

The Court will deny Bell's Motion to Dismiss Count 9 of the Indictment.

### III. ORDER

For the aforementioned reasons, the Court hereby **ORDERS** the following:

(1) Defendant's Motion to Compel is (R. 22) **DENIED**.

(2) Defendant's Motion to Suppress (R. 23) is **DENIED**.

(3) Defendant's Motion to Dismiss (R. 24) is **DENIED**.

(4) The Government's Motion for Leave to File a Supplement to its Response to the Defendant's Motion to Dismiss (R. 35) is **GRANTED**.

(5) **JURY TRIAL** is set for Monday, February 9, 2026 at 9:00 a.m. in Lexington, Kentucky. Counsel and defendant are to be

present at 8:30 a.m.  The estimated length of trial is three (3) days.

This 31st day of October, 2025.

Signed By:

**_Karen K. Caldwell_**

**United States District Judge**